# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Charles W. Pollock, Jr. | Civ. No. 20-0359 (DSD/BRT) |
| Petitioner, | |
| v. | **REPORT AND RECOMMENDATION** |
| Warden S. Kallis, Jill Slegh, and Jeremy Nerdstadt, | |
| Respondents. | |

Charles W. Pollock, Jr., *pro se* Petitioner.

Ana H. Voss, Esq., Ann M. Bildtsen, Esq., and Erin M. Secord, Esq., United States Attorney's Office, counsel for Respondents.

BECKY R. THORSON, United States Magistrate Judge.

Petitioner Charles W. Pollock, Jr. seeks habeas relief under 28 U.S.C. § 2241. (Doc. No. 1, Habeas Pet.)[1] Pollock asserts that his sentence has been elongated due to the Bureau of Prisons changing his custody classification to a higher level, depriving him of the ability to earn good conduct time credits or transfer to a prison camp facility. Pollock asserts his custody classification was increased to the greatest severity level without due process because it improperly relied upon information found in the Presentence Investigation Report which, in turn, incorporated conduct from state criminal charges on

---

[1] As the Court noted in its April 9, 2020 Order, it construes Pollock's filing as a habeas petition under 28 U.S.C. § 2241 because he expressly disclaims his filing is a "civil complaint." (Doc. No. 3 at 1 n.1.) Both Pollock and the Respondents' subsequent filings have proceeded under this assumption.

which he was acquitted. The matter is fully briefed and ripe for determination. For the reasons set forth below, this Court recommends that the Petition be denied.

I. Background

    A. Pollock's Conviction and Sentencing

Pollock was convicted following a jury trial in the United States District Court for the Central District of Illinois of Felon in Possession for Firearms and Ammunition, in violation of 18 U.S.C. §§ 922(g) and 924(a)(2) and Attempt to Tamper with a Witness by Corrupt Persuasion, in violation of 18 U.S.C. § 1512(b)(2)(C). (Doc. No. 11, Orum Decl. ¶ 13, Ex. B at 2.) Pollock is currently incarcerated at Federal Medical Center – Rochester ("FMC-Rochester") where he is serving a 240-month term of imprisonment with an anticipated release date of August 4, 2028, via good conduct time. (*Id.*)

Pollock's federal charges arose out of an incident in which Pollock threatened and sexually assaulted a woman. The Presentence Investigation Report ("PSR") indicates:

> On July 17, 2011, [the victim] contacted the Knox County Sheriff's Office and provided a written statement regarding the incident that occurred the previous night involving the defendant. [The victim] advised officers that the defendant used physical force when he took her from her residence. [The victim] advised that the defendant threatened to tie her up and rape and sodomize her daughter if she did not do what he told her to do. [The victim] further advised officers that the defendant forced her to bark like a dog and squeal like a pig while pushing and kicking her around. [The victim] also advised officers that the defendant forced her to have sexual intercourse with him. On July 18, 2011, [the victim] provided officers with another statement which advised that on the night of this incident, the defendant asked her what she thought about going to his garage and putting their heads together and him pulling the trigger on his .45 caliber handgun to end both of their lives together.

(*Id.* ¶ 14.) Based on that information, law enforcement obtained a search warrant for Pollock's residence. (*Id.* ¶ 15.) Law enforcement discovered ammunition during that search, and a witness later admitted to removing firearms from Pollock's vehicle—which were subsequently recovered. (*Id.*) Pollock was arrested on various state charges related to the conduct described above, including Aggravated Criminal Sexual Assault, Criminal Sexual Assault with Force, Unlawful Restraint, Aggravated Kidnapping/Inflicting Harm, Domestic Battery, Criminal Damage to Property, and Battery. (*Id.* ¶ 17.) Pollock was acquitted on those state charges on January 23, 2012, prior to his sentencing on federal charges in August 2013. (*Id.*)

The PSR recommended that the sentencing court take into account the underlying conduct reported by the victim in establishing Pollock's base offense level:

> Base Offense Level: The guideline for 18 U.S.C. § 922(g) offenses is found in USSG § 2K2.1 of the guidelines. Because the defendant possessed the firearm in connection with another offense, USSG § 2X1.1 is applied if the resulting offense level is greater than determined under USSG § 2K2.1. The defendant committed various offenses against victim [ ], including the offense of Aggravated Criminal Sexual Abuse. Pursuant to USSG § 2X1.1, the base offense level is to be determined from the guideline of the substantive offense plus any adjustments from that guideline. The defendant committed the offense of Criminal Sexual Abuse; Attempt to Commit Criminal Sexual Abuse. The base offense level is 30. USSG § 2A3.1(a)(2). Since the offense of Aggravated Criminal Sexual Abuse involved conduct described in 18 U.S.C. § 2241(a) or (b), increase by four levels. USSG § 2A3.1(b)(1). Since the victim was abducted, increase by four levels. USSG § 2A3.1(b)(5). The resulting base offense level is 38. USSG §§ 2K2.1(c)(1)(A) and 2X1.1.

*Id.* ¶ 16. Pollock objected to this calculation of his base offense level, arguing he did not possess a firearm in connection with any other felony offense. (Doc. No. 1-

3

1 at 9–10.) The sentencing court, however, overruled that objection and adopted the PSR and government's position. (*Id.* at 11.) The Court explained:

> The commentary for [USSG § 2X1.1] states that "in connection with" applies "if the firearm or ammunition facilitated or had the potential of facilitating, another felony offense or another offense, respectively." The commentary further states that another felony offense applies "regardless of whether a criminal charge was brought or a conviction obtained." So the fact that the defendant was acquitted in state court on charges related to this incident is irrelevant according to the guidelines. Evidence presented at the trial in this case clearly shows that the felony offense of Criminal Sexual Abuse was committed by the defendant against [the victim]. His possession of these firearms had the potential of facilitating the offense of Criminal Sexual Abuse. Even if the defendant never presented a firearm to [the victim] during this incident, her knowledge that he possessed firearms and his violent past makes it a reasonable inference that she felt her life was in danger when he told her about using his .45 caliber handgun to kill them. [And] she was aware that the defendant possessed firearms as she had accompanied him in June 2011 to his mother's residence to retrieve them.

(*Id.* at 10.)

### B. The Bureau of Prisons' Classification of Inmates

The Bureau of Prisons ("BOP") classifies inmates both by their institutional security level and their custody level. (Orum Decl. ¶ 4.) Custody classification, undertaken pursuant to BOP Program Statement P5100.08, is a "procedure whereby an inmate is assigned a level of supervision according to their criminal histories and institutional behavior/adjustment." (*Id.*, Ex. A at 25.) The custody classification is "an indication of how much staff supervision is required for an inmate within and beyond the confines of the institution." (*Id.*) The four custody levels are Maximum, In, Out, and Community. (*Id.*, Ex. A at 10.) Inmates are also assigned a security level—Minimum, Low, Medium, High, plus an Administrative category—to correspond with an

4

appropriate institution. (*Id.* ¶ 5, Ex. A at 9.) The assignment of an inmate to any given institution is based on a number of factors including the inmate's programming needs, judicial recommendations, and release residence. (*Id.*, Ex. A at 9–10.)

In evaluating an inmate's custody and security levels, the BOP scores the inmate on a Custody Classification Form designed to evaluate factors the BOP has determined are relevant to the level of supervision necessary while the inmate remains incarcerated. (*Id.* ¶ 6.) These factors include whether the inmate has a detainer, the severity of the inmate's current offense, any history of violence or disciplinary reports, and program participation. (*Id.*) An inmate's custody and security levels are then determined by the sum of the points assigned to them in each of these categories. (*Id.*)

When assessing an inmate's current offense, Program Statement P5100.08 directs BOP staff to assign the inmate between 0 and 7 points based on the "Offense Severity Scale." (*Id.* ¶ 7, Ex. A at 27–28.) Program Statement P5100.08 requires that staff use the highest score when scoring multiple current offenses, use the most comparable listed offense when an offense is not listed, consider total offense behavior, and assign points based on the most severe documented behavior. (*Id.*, Ex. A at 27–28, 53.) Inmates identified as having committed greatest severity offenses are assigned 7 points. (*Id.* ¶ 8, Ex. A at 27.) Such offenses include (1) "[k]idnap[p]ing – abduction, unlawful restraint, demanding or receiving ransom money"; (2) "[s]exual offenses – rape, sodomy, incest, carnal knowledge, transportation with coercion or force for commercial purposes"; and (3) [w]eapons – . . . brandishing or threatening use of a weapon." (*Id.*, Ex. A at 46.) If an inmate is assigned a greatest severity offense, the inmate is also assessed a greatest

5

severity Public Safety Factor ("PSF") requiring the inmate to be housed in at least a low-security facility. (*Id.* ¶ 11, Ex. A at 18.) A greatest severity PSF can be waived by the BOP. (*Id.*) To score an inmate's custody classification, BOP staff consider everything available in the inmate's Central File, including the inmate's Judgment and Commitment Order, Statement of Reasons, and PSR. (*Id.* ¶ 12.)

### C.   Pollock's Custody Classification

In assessing Pollock's custody classification under Program Statement P5100.08, the BOP assigned him a score of 7—greatest severity. (*Id.* ¶ 21, Ex. C.) According to the BOP, this score is based on two items. First, the BOP considered the sentencing court's conclusion that Pollock, who was convicted of a weapons offense, threatened to use a weapon to kill the victim. (*Id.* ¶ 22.) Such a threat qualifies as a greatest severity offense under Program Statement P5100.08. (*Id.*, Ex. A at 54.) Second, the BOP assesses the totality of the circumstances of the offense. The sentencing court included special offense characteristics based on evidence presented at trial that Pollock had kidnapped and raped the victim. (*Id.* ¶ 23; Doc. No. 1-1 at 10.) When viewed alongside the sentencing court's conclusion that Pollock used the weapon to facilitate that conduct, the BOP determined that the most comparable offenses listed in Program Statement P5100.08 were the greatest severity kidnapping and sexual offenses. (Orum Decl. ¶ 23.)

## II.   Analysis

### A.   Habeas Jurisdiction

As a threshold matter, this Court must first determine whether habeas jurisdiction exists over Pollock's claims. As noted, the parties have proceeded pursuant to the Court's

assumption that Pollock's filing is a 28 U.S.C. § 2241 habeas petition. Prisoners may challenge their conviction or sentence through 28 U.S.C. § 2255 in their court of conviction and sentencing. *Matheny v. Morrison*, 307 F.3d 709, 711 (8th Cir. 2002). Attacks on the execution of a sentence, such as loss of good conduct time, are made through 28 U.S.C. § 2241 in the district of incarceration. *Id.*; *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973); *see Kruger v. Erickson*, 77 F.3d 1071, 1073 (8th Cir. 1996) (per curiam).

Pollock's claims, at first glance, appear to be bread-and-butter Section 2241 claims. Pollock asserts he is being kept in prison longer because he is being deprived of good conduct credits. But Pollock's claims do not quite fit that mold. Pollock is claiming he is being deprived of the ability to earn good conduct credits by reason of his security misclassification. Thus, rather than losing good conduct credits that he has already accumulated, Pollock asserts the execution of his sentence is illegal because he cannot take advantage of opportunities that could shorten it. The Court must determine if this claim renders Pollock "in custody in violation of the Constitution or law or treaties of the United States." 28 U.S.C. § 2241(c)(3).

Pollock's claims appear to sound in provisions of the First Step Act ("FSA") that incentivize inmates for participating in and completing evidence-based recidivism reduction programming or productive activities, including awarding time credits towards their sentence. 18 U.S.C. § 3632(d). But Pollock's claims that he cannot earn time credits as a result of his security designation are not borne out by the plain language of the statute. The FSA provides, in relevant part:

> (4) Time credits.—
>
>> (A) In general.—A prisoner, except for an ineligible prisoner under subparagraph (D), who successfully completes evidence-based recidivism reduction programming or productive activities, shall earn time credits as follows:
>>
>>> (i) A prisoner shall earn 10 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities.
>>>
>>> (ii) A prisoner determined by the Bureau of Prisons to be at a minimum or low risk for recidivating, who, over 2 consecutive assessments, has not increased their risk of recidivism, shall earn an additional 5 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities.

18 U.S.C. § 3632(d)(4)(A). The FSA further defines "ineligible prisoner(s)" as those serving a sentence under certain specific provisions of federal law. *See* 18 U.S.C. § 3632(d)(4)(D). The FSA contains no further provisions that would render an inmate ineligible to earn time credits via programming activities.

Pollock was convicted of Felon in Possession for Firearms and Ammunition, in violation of 18 U.S.C. §§ 922(g) and 924(a)(2) and Attempt to Tamper with a Witness by Corrupt Persuasion, in violation of 18 U.S.C. § 1512(b)(2)(C). None of those three offenses are listed under the FSA's ineligibility criteria. *See* 18 U.S.C. § 3632(d)(4)(D). Moreover, the FSA's ineligibility criteria do not indicate in any way that an inmate's custody classification level can act as a bar to an inmate's ability to avail himself of time credits via programming activities. *See id*. Put simply, Pollock is incorrect that his greatest severity classification bars him from earning time credits and, consequently, his challenge to that classification is not a cognizable claim in a § 2241 habeas petition.

8

Pollock also argues that his custody classification is a bar to earning time credits because it precludes transfer to a prison camp where he might complete programming activities. (Doc. No. 18 at 9.) However, insofar as he characterizes his classification as an absolute bar to such a transfer, Pollock is incorrect. Program Statement 5100.08 provides that a greatest severity PSF can be waived by the BOP. But even absent waiver, this would constitute a challenge to the place of confinement which "is directed at a condition of and not the initial conviction leading to nor the length of Petitioner's continued confinement." *Smith v. Warden of Duluth Prison Camp*, No. 18-CV-2555 (WMW/LIB), 2019 WL 3325837, at *3 (D. Minn. Apr. 23, 2019), *report and recommendation adopted as modified*, 2019 WL 3323063 (D. Minn. July 24, 2019). To the extent that Pollock wishes to pursue a conditions-of-confinement claim, such a claim must be raised in a separate, civil lawsuit; a Writ of Habeas Corpus is not the appropriate remedy for such a claim. *Spencer v. Haynes*, 774 F.3d 467, 470 (8th Cir. 2014).

Finally, Pollock takes umbrage with the specific facts the BOP used in making his custody classification. As Pollock tells it, the facts were taken wholly from state charges—on which he was acquitted—completely divorced from his federal conviction. But the sentencing court concluded otherwise, finding that his federal charges stemmed from the same conduct that gave rise to the state charges. Indeed, the sentencing court found the state acquittal to be "irrelevant according to the [sentencing] guidelines." (Doc. No. 1-1 at 10.) To the extent Pollock challenges his sentence and the facts supporting it, his recourse lies in direct appeal or Section 2255, not some collateral attack via Section 2241. This Court has no jurisdictional authority to conclude it was error for the BOP to

rely upon the PSR as adopted by the sentencing court. Accordingly, this Court recommends that the Petition be denied for lack of jurisdiction.

### B. Pollock's APA Claim

In the alternative, even if this Court did have jurisdiction over this Petition, it would still lack subject-matter jurisdiction over Pollock's due-process claim. Given liberal construal, Pollock asserts an Administrative Procedures Act ("APA") claim that BOP Program Statement 5100.08 creates a liberty interest in his custody classification that requires due process protection. The APA contains the federal government's consent to suit for actions for relief other than money damages, providing that "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702. But to seek judicial review of an agency action, the statute under which the agency acted must not be precluded from judicial review under the APA or committed to agency discretion. 5 U.S.C. § 701(a); *Heckler v. Chaney*, 470 U.S. 821, 828 (1985).

Decisions made by the BOP concerning the imprisonment of individual prisoners are made pursuant to 18 U.S.C. § 3621. And those decisions are precluded from APA review by 18 U.S.C. § 3625. Program Statement 5100.08 explicitly cites to 18 U.S.C. § 3621(b):

> The classification of inmates is necessary to place each inmate in the most appropriate security level institution that also meets their program needs and is consistent with the Bureau's mission to protect society . . . The Bureau's classification, designation and redesignation procedures are consistent with the statutory authority contained in 18 U.S.C. § 3621(b).

10

(Orum Decl., Ex. A at 3.) Accordingly, courts have held that "[j]udicial review of agency actions made pursuant to 18 U.S.C. § 3621, including actions made under [Program Statement] 5100.08, is foreclosed under 18 U.S.C. § 3625." *Aldaco v. Holder*, No. 10-cv-590 JRT LIB, 2011 WL 825624, at *11 (D. Minn. Jan. 7, 2011), *report and recommendation adopted*, 2011 WL 839388 (D. Minn. Mar. 7, 2011); *see also Shah v. Samuels*, 121 F. Supp. 3d 843, 847 (E.D. Ark. 2015) (finding "review of [a] decision to classify Plaintiff as 'minimum' security inmate . . . is precluded by 18 U.S.C. § 3625"); *Brown v. Holder*, 770 F. Supp. 2d 363, 365 (D.D.C. 2011) (stating that 18 U.S.C. § 3625 applies to "cases in which inmates are challenging their security classifications and facility designations"); *Miller v. Fed. Bureau of Prisons*, 703 F. Supp. 2d 8, 16 (D.D.C. 2010) (same).

    Therefore, because judicial review of the BOP's classification of Pollock under Program Statement 5100.08 is barred under 18 U.S.C. § 3625, this Court finds that it lacks subject-matter jurisdiction over Pollock's purported APA claim.

## RECOMMENDATION

The Court lacks jurisdiction over Pollock's claims. Accordingly, **IT IS HEREBY RECOMMENDED** that the Petition for Writ of Habeas Corpus (**Doc. No. 1**) and Pollock's Motion to Adjudicate (**Doc. No. 28**) be **DENIED**.

Dated: April 6, 2021            *s/ Becky R. Thorson*
                                BECKY R. THORSON
                                United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Pursuant to Local Rule 72.2(b)(1), a party may file and serve specific written objections to this Report within **fourteen (14) days**. A party may respond to those objections within **fourteen (14) days** after service thereof. All objections and responses must comply with the word or line limits set forth in LR 72.2(c).